UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SONIA TODD | CIVIL ACTION |
| VERSUS | NO: 14-1101 |
| CITY OF MORGAN CITY, ET AL. | SECTION: R(5) |

## ORDER AND REASONS

Defendants City of Morgan City, Lieutenant Teddy Liner, and Rebecca Borel, in her capacity as administratrix of the Estate of Travis Crouch, and defendant Justin Palmature move the Court for summary judgment under Federal Rule of Civil Procedure 56 on plaintiff Sonia Todd's 42 U.S.C. § 1983 civil rights claim.[1] Because Todd failed to exhaust her administrative remedies, as required by the Prison Litigation Reform Act, the Court grants the motions.

---

[1] R. Doc. 34; R. Doc. 55.

## I. BACKGROUND

### A. Parties

Plaintiff Sonia Todd was incarcerated at the Morgan City Jail on September 24, 2013. Todd filed this suit when she was still incarcerated, on May 14, 2014, alleging that defendants violated 42 U.S.C. § 1983 and Todd's Fourth, Fifth, Eighth, and Fourteenth Amendment rights.[2] Todd also asserts various state law claims.[3]

Todd sues defendant Justin Palmature, a former correctional officer for the Morgan City Police Department, in his individual and official capacities. According to Todd, Palmature inappropriately and forcefully touched her and made offensive, sexually suggestive comments to her on several occasions. Todd also sues the City of Morgan City; Rebecca Borel, as administratrix of the Estate of Travis Crouch, who was the former police chief of Morgan City; and Lieutenant Teddy Liner, who supervises the jail.[4]

---

[2] R. Doc. 1.

[3] *See id.*

[4] *Id.*; R. Doc. 14.

## B. Factual Background

Todd was incarcerated at the Morgan City Jail on September 24, 2013. According to a recorded statement that Todd gave to a Morgan City Police Department detective, Todd had a physical encounter with Palmature "about three weeks" after she arrived, so sometime in October 2013.[5] Palmature accompanied Todd to the prison nurse, and while the two were alone in an elevator, Palmature kissed Todd, forcing his tongue into her mouth, put his hand on her breast over her prison jumpsuit, and placed her hand on his jeans so that Todd could feel his penis.[6] Todd also testified at her deposition that, shortly before her transfer to a different prison, Palmature told her that he "scoped out" a prison closet with no cameras and that "he was going to get [her] in there" to have sex with her.[7] According to a Morgan City Police Department investigation initiated in November 2013, Palmature spoke inappropriately to other inmates as well.[8]

---

[5] R. Doc. 55, Exhibit A, Liner Exhibit 6 (originally attached to R. Doc. 31).

[6] R. Doc. 55, Exhibit C, at 32-34 (Deposition of Sonia Todd).

[7] *Id.* at 28-29.

[8] R. Doc. 55, Exhibit G.

Todd did not immediately report the physical encounter, or any of Palmature's offensive comments, to any prison official. Consistent with Louisiana law, the Morgan City Jail maintains an administrative remedy procedure for resolving inmate grievances.[9] The jail provides inmates with formal "Inmate Grievance" forms, which require an inmate filing a grievance to provide her name, date of birth, date of incident, person involved, and a summary of the incident.[10] The form must also by signed by the complaining inmate, a corrections officer, and a witness.[11] Lieutenant Liner submitted an affidavit, in which he declares that Todd "lodged no grievance with the Morgan City Jail as a result of the incident with Palmature."[12] At Todd's deposition, she was asked, "Did you file any written grievances?," Todd responded, "No."[13]

According to Todd, sometime while she was incarcerated, she earned "trustee" status as an inmate. Todd testified at her deposition that she did not report the elevator incident because she believed, rightly or wrongly, that filing

---

[9] R. Doc. 55, Exhibit A, at ¶ 24-26 (Affidavit of Lieutenant Teddy R. Liner).

[10] R. Doc. 55, Exhibit A, Liner Exhibit 4.

[11] *Id.*

[12] R. Doc. 55, Exhibit A at ¶ 26.

[13] R. Doc. 55, Exhibit C, at 27.

a inmate grievance or otherwise complaining about Palmature would negatively affect her trustee status.[14] Instead, she downplayed Palmature's conduct because she "didn't want anybody to know" and did not want to "cause any problems" for herself while in prison.[15] Likewise, in her recorded statement, Todd told the Morgan City detective that she "overlooked" Palmature's actions and did not report him to prison officials because "she didn't want problems with the jail."[16]

In early December 2013, Todd confided in a nurse about Palmature's actions, and this nurse encouraged Todd to report him.[17] Todd also told her cellmate about Palmature.[18] Lieutenant Liner represents, and Todd does not dispute, that on December 12, 2013, an inmate other than Todd told him about Palmature's conduct.[19] Liner then began his own investigation into Palmature's conduct and set up a meeting with Todd.[20] At this meeting, Todd

---

[14]     *Id.* at 23, 43.

[15]     *Id.* at 23-24, 41-43; R. Doc. 55, Exhibit A, Liner Exhibit 6.

[16]     R. Doc. 55, Exhibit A, Liner Exhibit 6.

[17]     R. Doc. 55, Exhibit C, at 24.

[18]     *Id.* at 24-25.

[19]     R. Doc. 55, Exhibit A, ¶ 15.

[20]     *Id.* ¶ 16.

still failed to report that Palmature accosted Todd in the elevator. According to Todd's recorded statement, she did not want to say anything about "the way [Palmature] tried to tongue [her]" until the prison nurse again encouraged Todd to report Palmature's behavior.[21] So later that day, December 12, 2013, Todd wrote Liner a letter describing the elevator incident with Palmature. Todd's letter reads in relevant part:

> I am writing because I failed to tell you in our conversation earlier today of some things that happened when I first got here. It was probably a couple of weeks after I got arrested . . . the jailer took me from my cell to bring me downstairs to see the nurse. Well, when we got on the elevator he pretty much attacked me by grabbing me and sticking his tongue down by throat. He was trying to feel all over me. I did not say anything because I didn't want any problems. I'm sorry for not saying something sooner.[22]

The Morgan City Police Department arrested Palmature the next day, on December 13, 2013, for malfeasance in office involving prohibited sexual conduct with an inmate.[23] While awaiting a civil service termination hearing,

---

[21] According to the recorded statement, a woman named "Shyra" encouraged Todd to come forward after her meeting with Liner. Todd's deposition testimony reveals that "Officer Shyra" was the nurse working at the jail. *See* R. Doc. 55, Exhibit C, at 38.

[22] R. Doc. 55, Exhibit D (December 12, 2013 letter from Todd to Liner).

[23] R. Doc. 55, Exhibit A, Liner Exhibit 2, at 12, 22-30.

Palmature resigned on December 16, 2013.[24] In late December 2013, Todd was transferred from the Morgan City Jail to the Louisiana Transitional Center for Women in Tallulah, Louisiana.[25] She has since been released.[26]

### C. Defendants' Motions for Summary Judgment

Defendant Justin Palmature independently moves for summary judgment on Todd's § 1983 claim. Defendants City of Morgan City, Lieutenant Teddy Liner, and Rebecca Borel, as administratrix of the Estate of Travis Crouch, separately move for summary judgment on Todd's § 1983 claim as well. All defendants argue that Todd failed to exhaust her administrative remedies, as required by the Prison Litigation Reform Act, because she never filed a formal inmate grievance with the Morgan City Jail when she was incarcerated there.

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[24] R. Doc. 55, Exhibit A, Liner Exhibit 1, at 1-7; R. Doc. 55, Exhibit A, Liner Exhibit 2, at 12, 22-30.

[25] R. Doc. 34-1 at 10; R. Doc. 35-1 at 8; R. Doc. 55-2 at 21.

[26] R. Doc. 56 at 2.

judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (quoting *Celotex*, 477 U.S. at 322)).

## III. DISCUSSION

Because Todd was incarcerated when she filed this civil rights suit, her claims are governed by the Prison Litigation Reform Act of 1995. *See Janes v. Hernandez*, 215 F.3d 541 (5th Cir. 2000). Under the Act, a prisoner cannot file a lawsuit under 42 U.S.C. § 1983 "until such administrative remedies as are available are exhausted." 42 U.S.C. 1997e(a). This exhaustion requirement

serves a number of practical purposes. For example, exhaustion gives the prison facility "an opportunity to correct its own mistakes . . . and to allow for claim resolution in proceedings before an agency because it is faster and more economical than litigation[.]" *Bisby v. Garza*, 342 F. App'x 969, 971 (5th Cir. 2009) (citing *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). Further, exhaustion of administrative remedies may result in settled claims or otherwise convince the complaining party not to pursue the matter in federal court. *Woodford*, 548 U.S. at 89. In addition, "exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Id.* (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992).

In the Fifth Circuit, courts must strictly interpret the exhaustion requirement. *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008). "[P]roper exhaustion of administrative remedies is necessary" to satisfy the Act. *Woodford*, 548 U.S. at 84. "Proper exhaustion" requires an inmate to pursue the prison's administrative remedy procedure, "irrespective of the forms of relief sought and offered through administrative avenues." *See Booth v. Churner*, 532 U.S. 731, 741 n. 6 (2001); *Bisby*, 342 F. App'x at 971. Thus, an inmate seeking money damages in his or her civil rights lawsuit must still exhaust the prison's administrative remedy process even though the administrative process cannot award the inmate monetary relief. *Woodford*,

10

548 U.S. at 85 (citing *Booth*, 532 U.S. at 734); *see also Simkins v. Bridges*, 350 F. App'x 952, 953 (5th Cir. 2009). "Proper exhaustion" also requires an inmate to "comply with all administrative deadlines and procedural rules." *Bisby*, 342 F. App'x at 971 (citing *Woodford*, 548 U.S. at 89-93). An inmate cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.* (quoting *Woodford*, 548 U.S. at 83-84). In the Fifth Circuit, even "substantial compliance" with administrative remedy procedures does not satisfy exhaustion. *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010). Under the Act, proper exhaustion is a mandatory prerequisite to filing suit, and courts should "not read futility or other exceptions into statutory exhaustion requirements" where none exist. *Booth*, 532 U.S. at 741 n.6; *see also Mesquiti v. Gallegos*, 427 F. App'x 377, 378 (5th Cir. 2011).

Here, defendants argue that the record evidence undisputedly shows that Todd failed to file a formal prison grievance, in accordance with the Morgan City Jail's administrative remedy procedure, at any time when she was incarcerated at the jail. In support, defendants present evidence that an administrative remedy procedure has existed at the Morgan City Jail for more

than ten years.[27] Defendants also present evidence of the grievance forms necessary to initiate the administrative remedy process, and Lieutenant Liner declares in a sworn affidavit that Todd did not file any grievance with the Morgan City Jail.[28]

Todd does not dispute that an administrative remedy procedure exists. And by her own admission, Todd never filed a written grievance to initiate the administrative remedy process.[29] Todd specifically testified that "[she] didn't want anybody to know," and that she wanted to maintain her inmate trustee status and to avoid "caus[ing] problems" with the jail.[30] Indeed, the record reflects that Todd never approached any prison official regarding Palmature's conduct. Liner represents, and Todd does not dispute, that he heard from someone other than Todd that Palmature was acting inappropriately.[31] At the meeting with Liner, Todd still failed to report Palmature's behavior. Only after that meeting, and after more prodding by the prison nurse, did Todd have

---

[27] R. Doc. 55, Exhibit A, at ¶ 24-26.

[28] *Id.*; R. Doc. 55, Exhibit A, Liner Exhibit 5.

[29] R. Doc. 55, Exhibit C, at 27.

[30] R. Doc. 55, Exhibit A, Liner Exhibit 6; *see also* R. Doc. 55, Exhibit C, at 23-24, 41-43.

[31] R. Doc. 55, Exhibit A, ¶ 16.

second thoughts and write to Liner about Palmature accosting her in the elevator.[32]

Todd advances four arguments to oppose summary judgment. First, Todd argues that she did not file a formal grievance because she was not familiar with the administrative remedy procedure at Morgan City Jail. Second, Todd argues that her handwritten letter to Lieutenant Liner constitutes an administrative complaint. Third, Todd argues that her transfer to the Louisiana Transitional Center for Women terminated her ability to "follow up" on any administrative remedies available at the Morgan City Jail. Fourth, Todd argues that because her federal lawsuit seeks money damages, it would have been "beyond futile" to file a formal inmate grievance with the jail, whose administrative remedy procedure does not provide for monetary damage awards.[33]

As to her first argument, Lieutenant Liner declared in a sworn affidavit that the Morgan City Jail makes grievance forms available to all inmates.[34] Todd's ignorance of the jail's formal grievance procedures does not excuse her failure to exhaust. *See, e.g.*, *Gonzales v. Crawford*, 419 F. App'x 522, 523 (5th

---

[32] R. Doc. 55, Exhibit D; R. Doc. 55, Exhibit A, Liner Exhibit 6.

[33] R. Doc. 35-1 at 7-9.

[34] R. Doc. 55, Exhibit A, at ¶ 24-26.

Cir. 2011). Second, Todd contends only now that her December 2013 letter to Lieutenant Liner constitutes a proper administrative complaint. This argument plainly contradicts Todd's own admission that she did not file a written grievance with the jail to initiate the administrative remedy process.[35] Even if Todd's letter could be considered a initial grievance, although it does not include all of the information required by the jail's inmate grievance forms, there is no evidence that Todd *exhausted* the jail's administrative remedy procedure. The Prison Litigation Reform Act's exhaustion requirement "is satisfied only if the prisoner pursue[s] the grievance remedy to conclusion." *Wilson v. Epps*, 776 F.3d 296, 301 (5th Cir. 2015) (quoting *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)).

Third, Todd's transfer to a different prison facility also does not excuse the exhaustion requirement. According to Todd's deposition testimony, her recorded statement to the Morgan City detective, and her letter to Lieutenant Liner, her physical encounter with Palmature occurred approximately two or three weeks after Todd arrived at the Morgan City Jail, which was September 24, 2013.[36] Thus, Palmature accosted Todd in early to mid-October 2013.

---

[35] R. Doc. 55, Exhibit C, at 27.

[36] R. Doc. 55, Exhibit C, at 31-32; R. Doc. 55, Exhibit A, Liner Exhibit 6; R. Doc. 55, Exhibit D.

Todd was not transferred out of the Morgan City Jail until "late December."[37] Therefore, Todd had two months or more within which to file a grievance, but nonetheless failed to do so. Courts do not excuse an inmate's failure to exhaust under these circumstances. *See Nottingham v. Richardson*, 499 F. App'x 368, 374 (5th Cir. 2012) (holding that inmate failed to exhaust because he did not file grievances while in custody at the complained-of institution); *Allard v. Anderson*, 260 F. App'x 711, 714 (5th Cir. 2007) (holding inmate failed to exhaust because he never complained of prison conditions while "periodically detained" in the relevant prison facility); *Hill v. Epps*, 169 F. App'x 199, 200-01 (5th Cir. 2006) (holding inmate failed to exhaust because he did not file a grievance during the months before he was transferred).

Finally, Todd's argument that her pursuing money damages made administrative exhaustion "beyond futile" must also fail. There is no futility exception to the exhaustion requirement. *See Booth*, 532 U.S. at 741 n.6; *Mesquiti*, 427 F. App'x at 378; *Simkins*, 350 F. App'x at 953.

In sum, Todd's purported justifications for her failure to exhaust are legally inexcusable. Accordingly, the Court grants defendants' motions for summary judgment on Todd's section 1983 claim and dismisses this claim

---

[37] R. Doc. 34-1 at 10; R. Doc. 35-1 at 8; R. Doc. 55-2 at 21.

without prejudice. *See Booth*, 532 U.S. at 741 (affirming dismissal without prejudice).

## IV. PLAINTIFF'S REMAINING STATE LAW CLAIMS

Todd's remaining claims arise under Louisiana law. In her complaint, Todd invoked the Court's supplemental jurisdiction under 28 U.S.C. § 1367 to hear these claims. Under subsection 1367(c)(3), a court may decline to exercise supplemental jurisdiction over a state-law claim if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Because the Court grants summary judgment on Todd's lone federal claim, the Court declines to exercise supplemental jurisdiction over any and all remaining state-law claims and dismisses these claims without prejudice. *See Hicks v. Austin Indep. Sch. Dist.*, 564 F. App'x 747, 748 (5th Cir. 2014) ("The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial.").

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motions for summary judgment on Todd's section 1983 claim.[38] The Court DISMISSES WITHOUT PREJUDICE Todd's section 1983 claim and remaining state-law claims.

New Orleans, Louisiana, this 13th day of January, 2016.

_____
SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

---

[38] R. Doc. 34; R. Doc. 55.